UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | File No. 24-CR-00244(1)(2) (JMB/LIB) |
| Plaintiff, | |
| v. | **ORDER** |
| Dominic Ray Lafriniere (1), Destiny Jolynn Degroat (2), | |
| Defendants. | |

---

This matter is before the Court on the Order (Doc. No. 101) and Report and Recommendation (R&R) (Doc. No. 102) of United States Magistrate Judge Leo I. Brisbois dated September 30, 2025. The R&R recommends denial of Defendants Lafriniere and Degroat's Motions to Suppress Evidence (Doc. Nos. 63–65), and the Order grants in part and denies in part the Motion for Disclosure of Informant Identities (Doc. No. 66). Defendants jointly objected to the R&R, and Lafriniere seeks review of the Magistrate Judge's denial of his nondispositive disclosure motion. (Doc. No. 105.) For the following reasons, the Court overrules Defendants' objections and adopts the R&R. The Court also affirms the Magistrate Judge's Order granting in part and denying in part the Motion for Disclosure of Informant Identities.

## BACKGROUND

The factual background for this matter is set forth in the R&R and is incorporated here by reference. Because the R&R provides a detailed history, the Court only briefly summarizes it here.

1

In January 2024, the Paul Bunyan Drug Task Force (Task Force) was investigating Lafriniere for drug trafficking on the White Earth Reservation.[1]  (Doc. No. 86 [hereinafter, "Tr."] at 25.)  As part of the investigation, the Task Force officers received information that on January 4, 2024, Lafriniere was arrested in Morrison County.  (Gov't Ex. 5 at 4.)  The Task Force officers also received information from three confidential informants about Lafriniere's drug trafficking conduct.[2]  Confidential Informant #1 (CI-1), who had worked with law enforcement officers to conduct a controlled purchase of methamphetamine from Lafriniere in January 2022, informed officers that Lafriniere was trafficking narcotics.  (Tr. at 26; Gov't Ex. 5 at 4.)  On March 11, 2024, Confidential Informant #2 (CI-2) told officers that Lafriniere was trafficking narcotics, possessed controlled substances, and provided officers with Lafriniere's current phone number, which officers confirmed was accurate.  (Tr. at 27; Gov't Ex. 5 at 5.)  In addition, on March 28, 2024, Confidential Informant #3 (CI-3) also told officers that Lafriniere was trafficking narcotics, and that Lafriniere was traveling to the Twin Cities area.  (*Id.* at 29–30; Gov't Ex. 5 at 6.)

On April 3, 2024, CI-2 informed officers that there were individuals waiting at the White Earth Reservation for Lafriniere to return from the Twin Cities with narcotics.  (Tr. at 31–32.)  Officers used this information to apply for and obtain a tracking warrant to track Lafriniere's whereabouts in April 2024.  (*Id.* at 30; *see* Gov't Ex. 4.)  The tracker showed

---

[1] Lafriniere had previously been under investigation by the Paul Bunyan Drug Task Force for suspected drug trafficking beginning in January 2022.  (Tr. at 25.)

[2] The parties cite to warrant applications and the May 16, 2025 Motions Hearing transcript to refer to statements made by the confidential informants.  This Order does the same.

Lafriniere traveling to and from the Twin Cities between April 1 and 3, 2024. (Tr. at 30–31.) On April 8, electronic surveillance showed Lafriniere again leaving the White Earth Reservation and arriving in the Twin Cities on April 9. (*Id.* at 32–33.)

On April 10, 2024, suspecting that Lafriniere was traveling back to the White Earth Reservation with controlled substances, Special Agent and Investigator Derrick Cardinal of the White Earth Tribal Police Department contacted Sergeant Frank Tibbetts of the White Earth Tribal Police Department and told him that Lafriniere was under investigation for trafficking narcotics and that Lafriniere was traveling back to the Reservation from the Twin Cities. (*Id.* at 35.) Tibbetts located Lafriniere's pickup truck, observed Lafriniere fail to signal before turning and that one of his brake lights was not functioning, and then initiated a traffic stop. (*Id.* at 109–10.) Defendant Degroat was also in the car with Lafriniere during the stop. (*Id.* at 111.) Tibbetts informed Degroat that there was a warrant out for her arrest, which he learned through dispatch was pursuant to a second-degree drug charge, and arrested her. (*Id.* at 111–113) Tibbetts also asked Lafriniere where he was traveling from, to which Lafriniere responded, "DL" (i.e., Detroit Lakes). (Gov't Ex. 1 at 5:16–5:20; Tr. at 113–14.)

Cardinal joined Tibbetts approximately twelve minutes after the initiation of the traffic stop. (*See* Tr. at 114–115; Gov't Ex. 1 at 12:38–14:07.) Cardinal and Tibbetts ultimately decided to impound and tow Lafriniere's pickup (*see* Gov't Ex. 3 at 4:04–4:08), while Lafriniere was free to leave, and the vehicle was towed. (Tr. at 44–45.) Cardinal applied later that day for a search warrant for Lafriniere's vehicle. (*See* Gov't Ex. 5.) After the warrant was signed, investigators searched the vehicle and found approximately 905

grams of methamphetamine, 65 grams of cocaine, a scale, and small zip-top bags. (Tr. at 45.) Ultimately, Lafriniere and Degroat were each charged with one count of conspiracy to distribute methamphetamine and one count of possession with intent to distribute methamphetamine and cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B).

Degroat and Lafriniere filed Motions to Suppress Evidence based on a lack of reasonable suspicion to expand the traffic stop and a lack of probable cause to seize Lafriniere's vehicle, as well as to suppress evidence obtained from executing warrants that were derived from the search of the vehicle after the expansion of the traffic stop. (*See* Doc. Nos. 63–65.) Lafriniere also filed a nondispositive Motion to Disclose the identities of all confidential informants. (*See* Doc. No. 66.) The R&R (Doc. No. 102) recommended denial of Defendants' suppression motions (Doc. Nos. 63–65), and the Order (Doc. No. 101) denied Lafriniere's nondispositive disclosure motion (Doc. No. 66).

## DISCUSSION

I.  **REVIEW OF THE REPORT AND RECOMMENDATION**

Defendants object to the Magistrate Judge's recommended conclusions that law enforcement officers had reasonable suspicion to extend the traffic stop and probable cause to seize the vehicle. After conducting a de novo review of the objected-to portions of the R&R, *see* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3); D. Minn. L.R. 72.2(b), the Court adopts the recommendations and denies the suppression motions (Doc. No. 63–65).[3]

---

[3] After conducting a de novo of the remainder of the R&R, the Court also concurs with the unobjected-to portions of the R&R.

4

### A. Reasonable Suspicion to Extend Traffic Stop

Defendants argue that officers lacked reasonable suspicion to expand the April 10, 2024 traffic stop. The Court disagrees. Because the information provided by the confidential informants and Lafriniere's evasive and incomplete answers to Tibbetts's questions both reasonably warranted further investigation, the Court concludes that law enforcement officers had sufficient justification to extend the traffic stop.[4]

Even when police have lawfully stopped a vehicle, the stop can become unconstitutional if it is unreasonably extended or prolonged. *United States v. Callison*, 2 F.4th 1128, 1131 (8th Cir. 2021). A traffic stop becomes unlawful "if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015) (quotation omitted). However, an officer may lawfully extend a traffic stop if the officer has a reasonable suspicion of additional criminal activity. *Rodriguez*, 575 U.S. at 355. "An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered." *United States v. Magallon*, 984 F.3d 1263, 1278 (8th Cir. 2021) (quotation omitted). The suspicious facts must be "specific and articulable facts which, taken together with rational inferences from those facts, amount to reasonable suspicion that further investigation is warranted." *Id.* (quotation omitted); *see also Terry v. Ohio*, 392 U.S. 1, 28–31 (1968).

---

[4] The parties contest only the expansion of the stop, and they do not contest the legality of the initial decision to conduct the stop.

To determine whether reasonable suspicion existed, courts consider the totality of the circumstances. *See Navarette v. Cal.*, 572 U.S. 393, 395, 397 (2014). "Reasonable suspicion may be based on an informant's tip as long as it is sufficiently reliable." *United States v. Hill*, 91 F.3d 1064, 1069 (8th Cir. 1996) (quotation omitted). Furthermore, "[t]he collective knowledge of law enforcement officers conducting an investigation is sufficient to provide reasonable suspicion, and . . . can be imputed to the individual officer who initiated the traffic stop when there is some communication between the officers." *United States v. Rederick*, 65 F.4th 961, 966 (8th Cir. 2023) (quotation omitted).

In this case, Tibbetts possessed reasonable, articulable suspicion to extend the traffic stop. For instance, the information provided to law enforcement by confidential informants establishes the necessary reasonable suspicion to investigate offenses beyond the basis for the traffic stop.[5] On March 11, 2024, CI-2 provided Cardinal with Lafriniere's phone number. (Gov't Ex. 4 at 6; Tr. at 29.) CI-2 also told law enforcement that Lafriniere "was trafficking narcotics and in possession of controlled substances." (Tr. at 27.) On April 3, 2024, CI-2 told Cardinal that there were people waiting for Lafriniere to return to the reservation with narcotics. (*Id.* at 31.) Cardinal's reasonable suspicion was then imputed to Tibbetts. *See Rederick*, 65 F.4th at 966. By communicating a week before the April 10, 2024 traffic stop that individuals were waiting for Lafriniere to return with narcotics, CI-2 alone provided information that was sufficient to establish reasonable suspicion.

---

[5] The statements provided by the three confidential informants were generally consistent, and law enforcement officers were able to corroborate certain details provided to them, including Lafriniere's telephone number and whereabouts, among other details.

Additional information from CI-3, as described in the R&R, merely bolsters the reasonable suspicion that already existed from CI-2's information.

Separately and independently, when Tibbetts asked Lafriniere where he was coming from, Lafriniere responded, "DL"—that is, Detroit Lakes—which raised Tibbetts's suspicions because he knew that Lafriniere had actually been coming from the Twin Cities metro area. (Gov't Ex. 1 at 5:15–5:20; Tr. at 32–35; 112–14.)[6] In addition, Tibbetts informed Degroat that there was a warrant for her arrest, handcuffed her, and placed her in his patrol vehicle. (Gov't Ex. 1 at 2:15–3:27; Tr. at 111.) Tibbetts learned that the warrant was related to a felony second-degree drug charge, which further heightened his suspicions. (Gov't Ex. 1 at 6:34; Tr. at 113–14.)

In sum, the information that CI-2 provided to law enforcement and Lafriniere's vague and evasive response to Tibbetts's question about his travel are sufficient to establish reasonable suspicion to extend the April 10, 2024 traffic stop.

### B.    Probable Cause to Seize the Vehicle

For many of the same reasons, the Court also overrules Defendants' objection to the recommended conclusion regarding probable cause to seize the vehicle.

---

[6] Even if Lafriniere was being truthful to the extent that he had passed through Detroit Lakes at some point, this response is evasive and incomplete, further justifying an extension of the traffic stop. *See United States v. Pacheco*, 996 F.3d 508, 512 (8th Cir. 2021) ("We have previously found reasonable suspicion to detain a vehicle's occupants in part because of their vague and confusing answers to routine questions about travel plans.").

The Fourth Amendment secures persons "against unreasonable searches and seizures." U.S. Const. amend. IV.  Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  "In determining whether an officer had probable cause . . ., courts apply a common sense approach and consider all relevant circumstances." *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005).  The automobile exception permits the warrantless search or seizure of a vehicle if the police had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began. *United States v. Soderman*, 983 F.3d 369, 375 (8th Cir. 2020) ("[T]he automobile exception to the Fourth Amendment's warrant requirement permits the warrantless search or seizure of a vehicle by officers possessing probable cause to do so."); *Hill*, 91 F.3d at 1070 ("Law enforcement officials may seize a vehicle without a warrant if there is probable cause to believe that contraband is hidden within.").

Here, the reliable information from the confidential informants in addition to Lafriniere's responses to law enforcement regarding his whereabouts establish probable cause.[7]  As noted above, the informants provided information that Lafriniere was traveling

---

[7] When assessing probable cause based on information supplied by an informant, the core question is "whether the information is reliable." *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993).  "Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." *Id.*  "If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." *Id.* at 593–94 (citing *Gates*, 462 U.S. at 233–34 and *Draper v. United States*, 358 U.S. 307, 313 (1959)).  As noted above, law enforcement had independently corroborated information CI-2 had

to the Twin Cities to obtain drugs for sale on the White Earth Reservation. (Gov't Ex. 4 at 6; Tr. at 27–31.) In addition, Lafriniere provided false and conflicting statements both before and after the expansion of the traffic stop regarding his recent whereabouts. Initially, when Tibbetts asked Lafriniere where he was coming from, Lafriniere indicated he was coming from Detroit Lakes, although Tibbetts knew that Lafriniere had actually traveled from the Twin Cities. (Gov't Ex. 1 at 5:15–5:20; Tr. at 32–35, 112–114.) Then, when Cardinal arrived and specifically asked Lafriniere whether he had been anywhere other than Detroit Lakes, Lafriniere responded "no." (Gov't Ex. 3 at 3:40.)[8] These changing and false statements, in addition to the information provided by the confidential informants, support a finding that the police had probable cause to believe Lafriniere's vehicle contained contraband or other evidence of a crime.

## II.    REVIEW OF THE ORDER DENYING THE NONDISPOSITIVE MOTION

Lafriniere also contests the Magistrate Judge's decision to deny in part his nondispositive Motion requesting disclosure of the identity of informants. (Doc. No. 66.) The Court discerns no error by the Magistrate Judge and affirms the denial of this Motion.

---

provided in the past and found it to be true. (Gov't Ex. 5 at 5.) Although CI-2 was convicted of a crime involving deceit in 2004, law enforcement had not found CI-2 to have provided false information in the past (*id.*), and they verified that the phone number provided by CI-2 for Lafriniere was accurate and current (*id.*; Tr. at 29). The R&R describes similar reasons supporting the informants' credibility.

[8] Because the Court concludes that neither the traffic stop nor the seizure of the vehicle was unconstitutional, it overrules Defendants' derivative objection to the recommendation to deny suppression of evidence obtained from the search of the vehicle, including the evidence obtained as a result of additional search warrants relating to the search and seizure of data from Defendants' phones and social media accounts (Doc. Nos. 64, 65).

"The standard of review applicable to an appeal of a magistrate judge's order on nondispositive pretrial matters is extremely deferential." *United States v. Banks*, No. 23-CR-307 (JRT/DTS), 2025 WL 2621753, at *8 (D. Minn. Sep. 11, 2025). This Court will reverse such an order only if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a); D. Minn. LR 72.2(a)(3). "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). "A decision is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 556 (D. Minn. 2008) (quotation omitted).

"The Government enjoys a limited privilege to keep its informants' identities confidential, one that yields to a defendant's showing that disclosure is 'relevant and helpful' to his defense or is 'essential to a fair determination' of his case." *United States v. Blair*, 93 F.4th 1080, 1084 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 401 (2024) (quoting *Roviaro v. United States*, 353 U.S. 53, 59–61 (1957)). Disclosure is not required if the confidential informant's information is not material, which is "when the informant 'merely convey[s] information to the government but neither witness[es] nor participat[es] in the offense.'" *United States v. Lapsley*, 334 F.3d 762, 764 (8th Cir. 2003) (quoting *United States v. Chevre*, 146 F.3d 622, 623 (8th Cir. 1998)).

The Magistrate Judge granted Lafriniere's nondispositive motion for disclosure in part. Specifically, the Magistrate Judge required the Government to disclose the identity

10

of any informants whose testimony the Government intends to introduce at trial in the present case. However, the Magistrate Judge denied Lafriniere's motion to disclose the identity of informants who were merely tipsters, who were not alleged to have participated in the charged offense, and whose testimony the Government does not intend to introduce at trial in the present case. The Magistrate Judge correctly characterized the information provided by these informants as immaterial. *See, e.g.*, *Lapsey*, 146 F.3d at 623. This ruling is consistent with *Lapsey* and not clearly erroneous.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' Objections to the Report and Recommendation (Doc. No. 105) are OVERRULED.

2. The Report and Recommendation (Doc. No. 102) is ADOPTED in full.

3. Defendants' Motions to Suppress (Doc. Nos. 63, 64, 65) are DENIED.

4. The Magistrate Judge's Order (Doc. No. 101) denying Defendant Lafriniere's motion for disclosure (Doc. No. 66) is UPHELD.

Dated:  December 12, 2025

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court